# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| MATHEW HENNINGS, | \* | |
| | \* | No. 18-1336V |
| Petitioner, | \* | Special Master Christian J. Moran |
| | \* | |
| v. | \* | |
| | \* | Filed: April 13, 2020 |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | dismissal; receipt of vaccination |
| | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Mark T. Sadaka, Mark T. Sadaka, LLC, Englewood, NJ, for petitioner;
Lara Englund, United States Dep't of Justice, Washington, DC, for respondent.

### DECISION DENYING COMPENSATION[1]

Mathew Hennings is seeking an award through the National Childhood Vaccine Injury Compensation Program, codified at 42 U.S.C. § 300aa–10 through 34. The premise of his claim is that he received an influenza vaccination on or about October 1, 2015. Am. Pet., filed Jan. 24, 2020, at preamble. However, for the reasons explained below, the evidence does not support a finding that he received this vaccination. Without this foundational point, he cannot receive compensation.

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the decision will be available to anyone with access to the internet (http://www.cofc.uscourts.gov/aggregator/sources/7). In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the decision.

## **Procedural History**

Mr. Hennings alleged that he "received an influenza vaccination on or about October 1, 2015, and who suffered shortly thereafter vaccine-induced polyneuropathy." Pet., filed Aug. 31, 2018, preamble. Mr. Hennings provided more context for the vaccination, alleging that he received the vaccination "at his place of employment, where it was being offered by a third party vendor." Id. ¶ 2. Mr. Hennings added that his attorney "is filing this case to preserve the statute of limitations, during the record collection process and plans on filing an amended complaint once all records have been received and reviewed." Id. at ¶ 8.

Within approximately six weeks of filing the petition, Mr. Hennings sought to use formal discovery methods to gain information from his employer, VFI Corporate Finance. Pet'r's Mot. to Issue Subpoena, filed Oct. 10, 2018. Mr. Hennings was granted this authority. Order, issued Oct. 15, 2018.

Mr. Hennings filed the response of VFI Corporate Finance as exhibit 4.[2] VFI Corporate Finance's website states that "VFI has financed billions in assets worldwide. We specialize in meeting the financial needs of companies from the Middle-Market to Fortune 500 companies." See court exhibit 1001 (VFI Corporate Finance, About VFI Corporate Finance, https://www.vfi.net/about-vfi/ (last visited Apr. 7, 2020)). A legal assistant from VFI Corporate Finance informed Mr. Hennings's attorney that "VFI has conducted a search of all records in its possession, and does not have information or documentation regarding VFI Corporate Finance sponsored employee vaccination events held from August 1, 2015, to December 31, 2015." Exhibit 4 (letter dated Nov. 7, 2018). The legal assistant also provided information about Intermountain Healthcare Pharmacy Services, "a third-party provider who would have information regarding flu vaccination events held from August 1, 2015 to December 31, 2015." Id.

Approximately six months after receiving this response from VFI Corporate Finance, Mr. Hennings filed a motion to authorize a subpoena to Intermountain Healthcare. Pet'r's Mot., filed May 22, 2019. This motion too was granted. Order, issued May 23, 2019.

---

[2] Mr. Hennings filed exhibit 4 on November 15, 2018, and December 21, 2018. But, exhibit 4 is the same in both filings.

Mr. Hennings submitted the results of the subpoena to Intermountain Healthcare on July 19, 2019.  Exhibit 7.  An unidentified person stated, "After an extensive search we are unable to find the type of record requested at this facility." The letter continued "Intermountain Healthcare does not keep records from vaccination clinics held at off site locations.  The patient signs a consent form for the vaccination, [is] given the vaccine, and then a paper with the vaccine's information for their own record."  Exhibit 7.

On the same day as Mr. Hennings filed the letter from Intermountain Healthcare, he also filed his employment records from VFI Corporate Finance.  Exhibit 8.  These records, which are 73 pages, do not refer to any immunization program.  Supplemental information about Mr. Hennings's work schedule also provided no information.  Exhibit 9.

Mr. Hennings also explored another source that could potentially document his receipt of vaccination.  Utah, the state in which Mr. Hennings lives, maintains a "secure, confidential immunization information system that helps healthcare providers . . . and Utah residents maintain consolidated immunization histories." Court exhibit 1002 (Utah Department of Health, Utah Statewide Immunization Information System (USIIS), https://immunize.utah.gov/usiis/ (last visited Apr. 7, 2020)).  Mr. Hennings's query prompted a response that no immunization record could be found.  Exhibit 10.

Mr. Hennings attested that he received a flu vaccination while employed as a manager at VFI Corporate Finance.  This flu vaccination happened in the fall 2015, and he began having numbness and tingling in his left foot a few weeks after the vaccination.  Exhibit 12 (affidavit).  The same day that Mr. Hennings filed this affidavit, January 24, 2020, he also filed his amended petition.  With respect to factual allegations, the amended petition is not meaningfully different from the original petition, although the amended petition added Mr. Hennings's initial treatment details and his eventual diagnosis of polyneuropathy.

Mr. Hennings then filed a motion requesting a finding that he was vaccinated in the fall 2015.  Pet'r's Status Rep., filed Jan. 24, 2020.[3]  Mr. Hennings relies upon his affidavit.

---

[3] Because Mr. Hennings is seeking relief, the proper CM/ECF docket entry is a motion. When a motion is docketed, CM/ECF creates deadlines for filing responses and replies automatically.  See Vaccine Rule 20(b).

The Secretary opposed Mr. Hennings's proposed finding of fact. The Secretary relied upon the absence of any record of vaccination in material from VFI Corporate Finance, Intermountain Healthcare, or the Utah state registry. The Secretary also noted that the medical records, which began to be created approximately six months after vaccination, do not mention the flu vaccination. Resp't's Resp., filed Feb. 26, 2020.

Mr. Hennings maintained his position by developing various arguments in his reply. Pet'r's Reply, filed Mar. 19, 2020.[4] With the filing of the reply brief, the issue is ready for adjudication.

### **Standards for Adjudication**

The Vaccine Act requires a petitioner to prove receipt of a vaccine by a preponderance of the evidence. 42 U.S.C. §§ 300aa–11(c)(1), –13(a)(1)(A). Under this standard, the special master, before finding in favor of the party with the burden to prove a fact's existence, must "believe that the existence of a fact is more probable than its nonexistence." Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In determining the persuasiveness of the evidence, the special master must assess "the record as a whole" and may not find that a petitioner received a vaccine "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa–13(a)(1). Vaccine Rule 2 holds, in accordance with 42 U.S.C. § 300aa–11(c), that a petition shall be accompanied by "all available medical records supporting the allegations in the petition, including physician and hospital records relating to: the vaccination itself." Vaccine Rule 2(c)(2)(A)(i).

Although strictly contemporaneous documentation of vaccination from a health care provider is the best evidence, its production is not an absolute requirement. See Centmehaiey v. Sec'y of Health & Human Servs., 32 Fed. Cl. 612, 621 (1995) ("The lack of contemporaneous, documentary proof of a vaccination . . . does not necessarily bar recovery."). Vaccine Rule 2 states that "[i]f the required medical records are not submitted, the petitioner must include an affidavit detailing the efforts made to obtain such records and the reasons for their unavailability." Vaccine Rule 2(c)(2)(B)(i). Furthermore, if petitioner's claim is

---

[4] Mr. Hennings should not have waited until his reply brief to present these arguments. See SmithKline Beecham, Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed. Cir. 2006).

4

"based in any part on the observations or testimony of any person, the petitioner should include the substance of each person's proposed testimony in a detailed affidavit(s) supporting all elements of the allegations made in the petition." Vaccine Rule 2(c)(2)(B)(ii).

Special masters have found in favor of vaccine administration where direct documentation of vaccination is unavailable. In such cases, preponderant evidence has been found in other medical records and/or witness testimony. For example, corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. See Lamberti v. Sec'y of Health & Human Servs., No. 99-507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding multiple medical record references to vaccine receipt to constitute adequate evidence of administration); Groht v. Sec'y of Health & Human Servs., No. 00-287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006) (finding a treating physician's note—"4/30/97—Hep B. inj. # 1 (not given here) (pt. wanted this to be charted)"—to be sufficient proof of vaccination); Wonish v. Sec'y of Health & Human Servs., No. 90-667V, 1991 WL 83959, at *4 (Cl. Ct. Spec. Mstr. May 6, 1991) (finding parental testimony "corroborated strongly by medical records [referring] back to the [vaccination]" to be sufficient to establish vaccine administration). On the other hand, the lack of support for vaccination in records can contribute to a finding that a petitioner did not receive a vaccination. See Keaton v. Sec'y of Health & Human Servs., No. 12-444V, 2014 WL 3696349 (Fed. Cl. Spec. Mstr. July 2, 2014).

Addressing the value of medical records in general, the Federal Circuit has noted that such records "warrant consideration as trustworthy evidence." Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). The Circuit added that "[t]he records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." Id.

To request that a special master determine whether a vaccination has been administered, both parties can move for a ruling on the record on this issue. Smith v. Sec'y of Health & Human Servs., No. 14-982V, 2017 WL 2927419, at *1 (Fed. Cl. Spec. Mstr. June 2, 2017) (motion by respondent); Goins v. Sec'y of Health & Human Servs., No. 15-848V, 2017 WL 1231687, at *2 (Fed. Cl. Spec. Mstr. Mar. 10, 2017) (motion by petitioner).

## **Discussion**

Mr. Hennings has not presented persuasive evidence that he received a flu vaccine in the fall 2015. No record of vaccination appears in three different potential sources of information–Mr. Hennings's employer (who hosted the vaccination clinic), Intermountain Healthcare (who allegedly administered the vaccine), and the Utah vaccine registry (who could register the vaccination).

To some degree, Mr. Hennings has an explanation for the absence of records. VFI Corporate Finance did not deny that it sponsored a service to provide vaccinations to its employees. VFI Corporate Finance simply stated that it does not possess any records from an event in the fall 2015. To Mr. Hennings, VFI Corporate Finance's failure to contest the suggestion that it held such an event supports a finding that it held an event in fall 2015. Similarly, according to Mr. Hennings, the absence of records from Intermountain Healthcare is not meaningful because Intermountain Healthcare stated that it does not maintain records for vaccination clinics held at off-site locations. Finally, Mr. Hennings asserts, without citing any legal authority, that administrators of vaccinations are legally required to report vaccinations to the Utah registry only when the vaccinee is a child. These points are legitimate.

However, other than his affidavit, Mr. Hennings does not point to any evidence discussing his vaccination. As the Secretary pointed out, Mr. Hennings saw his primary care doctor on April 15, 2016, which is approximately six months after the alleged vaccination. This record does not mention a vaccination. Exhibit 1 at 10-12; see also Resp't's Resp. at 2.

In his reply, Mr. Hennings does not cite any medical records that discuss a vaccination. The undersigned has not located any medical records describing a vaccination.

The absence of any medical record means that Mr. Hennings is relying upon his recollection alone. Given the circumstances, this evidence is not persuasive. See 42 U.S.C. § 300aa–13(a).[5]

---

[5] Whether persuasive evidence establishes that Mr. Hennings received a vaccination is, in some ways, distinct from the question of whether the vaccination caused or significantly aggravated a polyneuropathy. On the other hand, the date of vaccination is a factor in considering whether the interval between the vaccination and the onset of the disease is

(. . . continued)

## **Conclusion**

Mr. Hennings has not established that he received a flu vaccination. Without this foundation, he cannot receive compensation. Consequently, the Clerk's Office is directed to enter judgment in accord with this decision unless a motion for review is filed.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master

---

medically appropriate. See Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

Here, even if it were assumed that Mr. Hennings received the flu vaccination on October 1, 2015, the date he proposes in his amended petition, his ability to establish causation appears questionable. Mr. Hennings recognizes that on February 9, 2018, he told a doctor that numbness in his feet began two years ago. Pet'r's Reply at 2, citing exhibit 1 at 1. If, again for sake of argument, it is assumed that Mr. Hennings's neuropathy started on February 9, 2016, then the interval between (an assumed) vaccination and (an assumed) onset is 131 days (more than 18 weeks). Eighteen weeks is far beyond what special masters have accepted as a medically appropriate interval. Moreover, Mr. Hennings reported at his April 15, 2016 appointment with Dr. Witbeck that the pain, numbness, and weakness in his feet had begun "1 year ago." Exhibit 1 at 10. Thus, if Mr. Hennings's foot symptoms began in approximately April 2015, then these symptoms pre-dated the vaccination.